UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRIAN PENDLETON, )
 )
    Plaintiff, )
 )
vs. ) Case No. 4:06CV1455 HEA
 )
QUIKTRIP CORPORATION, )
 )
    Defendant. )

# **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 5]. Plaintiff opposes the motion. For the reasons set forth below, the Motion is denied.

Plaintiff brought this action under the provisions of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq*. (ERISA). Plaintiff's Complaint alleges that Defendant violated Section 510 of ERISA, 29 U.S.C. § 1140,[1] which makes it unlawful, *inter alia*, for an employer to discharge a

---

[1] Section 1140 provides, in relevant part:

It shall be unlawful for any person to discharge, fine, suspend, expel discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this

participant in an ERISA plan for the purpose of interfering with the participant's ERISA rights under the plan.  Defendant seeks dismissal on the grounds that this action is barred by the applicable statute of limitations and that Plaintiff has failed to sufficiently allege a cause of action.

**Facts and Background**[2]

The Complaint alleges the following:  Plaintiff was employed by Defendant as Director of Real Estate and was responsible for identifying and negotiating the acquisition of property for and overseeing development of QuikTrip retail store locations in a five-state region.  Plaintiff was employed in Defendant's St. Louis Division Office.  His employment was terminated on July 27, 2004.

At the time of his discharge, Defendant maintained several employee benefit plans governed by ERISA.  Particularly, Defendant maintained a severance pay policy and plan for upper management employees that provided that the terms of a departing employee's severance package would be negotiated between the company and the employee on a case by case basis.

Defendant also maintained the QuikTrip Corporation Class B Common Stock

---

subchapter, or the Welfare and Pension Plans Disclosure Act.

[2] The facts set forth herein are taken from Plaintiff's Complaint.  This rendition of the relevant facts is detailed herein for the purposes of the Motion to Dismiss only, and in no way relieves any party of proof thereof in later proceedings.

Purchase Plan, under which Plaintiff during the course of his employment was issued stock that was subject to redemption by Defendant following termination of Plaintiff's employment.

Plaintiff informed Defendant in June, 2004, that he intended to sever the employment relationship and gave Defendant three months' notice of his separation. Initially, Defendant asked Plaintiff to remain with Defendant through the end of the year. Plaintiff advised Defendant that he would consider it.

Subsequently, Defendant informed Plaintiff that he was being terminated, effective immediately, due to insubordination and gross misconduct. The explanation given was that Plaintiff, in meeting with his staff, expressed disagreement with Defendant's selection of his replacement. Plaintiff's boss told Plaintiff that Defendant was not characterizing Plaintiff's involuntary termination as a "dismissal for cause," but rather as an action by Defendant to accelerate his resignation.

Defendant thereafter informed Plaintiff that he would not be offered the post-termination benefits that Plaintiff had expected to receive in reliance on the terms of the Severance Plan and Stock Plan and established custom and practice in the operation of those plans.

According to the allegations in the Complaint, the Severance Plan provided

that severance packages for upper-management employees, such as Plaintiff, would be negotiated, but that employees terminated for cause would receive no severance, regardless of their status or years of service. Plaintiff alleges that the "custom and practice of the company was to pay upper-management employees, such as Pendleton, severance equal to two weeks' salary for each year of employment."

The Stock Plan provided that, in the event of a termination of one's employment, Defendant had the option, exercisable within one hundred eighty (180) days after the date of payment of the last installment of severance, to purchase a plan participant's shares of Defendant's stock for book value, which was to be determined as of the last day of the month preceding the date of payment of the last installment of severance.

Defendant informed Plaintiff that he was not eligible for severance because he was terminated for cause, although he was assured by the vice president of human resources that he would receive severance pay. Defendant refused, however to pay any severance and refused to negotiate with Plaintiff regarding the severance pay.

Defendant also advised Plaintiff that, under the Stock Plan, Plaintiff was required to sell back to Defendant, within thirty (30) days of receiving his last severance payment, the shares of Defendant stock that he had acquired over the years of his service with Defendant. Defendant offered to pay $677,957.00 upon

immediate redemption of Plaintiff's stock. Plaintiff had expected to be permitted to redeem his stock over a period of five years following his termination, based on the language of the Stock Plan and "established company custom and practice."

Plaintiff claims in two counts that Defendant's actions violated the terms of the Severance Plan, (Count I), and the Stock Option Plan, (Count II), constituted bad faith and a breach of its fiduciary duty and violated ERISA.

### **Standards of Review**

The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint. A complaint "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Gilmore v. County of Douglas, State of Neb.*, 406 F.3d 935, 937 (8th Cir. 2005). When considering a motion to dismiss, courts are required to accept the complaint's factual allegations as true and to construe them in the light most favorable to the plaintiff. *Krentz v. Robertson Fire Protection District,* 228 F.3d 897, 905 (8th Cir. 2000). All reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). A complaint should not be dismissed "merely because the court doubts that a plaintiff will be able to

prove all of the necessary factual allegations." *Krentz*, 228 F.3d at 905.  Further, a complaint should not be dismissed unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Midwestern Machinery, Inc.*, at 441 (8th Cir. 1999) (citing *Springdale Education Association v. Springdale School. Dist.,* 133 F.3d 649, 651 (8th Cir. 1998)); *McCormack v. Citibank, N.A.,* 979 F.2d 643, 646 (8th Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. at 45-46.

## Discussion

In analyzing whether a Complaint states a cause of action under the provisions of Rule 12(b)(6), the Court confines its analysis to the Complaint itself to determine whether the Complaint contains sufficient allegations to put the defendants on notice of cognizable claims against them.

<u>Statute of Limitations</u>

Defendant initially argues that the Complaint must be dismissed because the claims contained therein are barred by the applicable statute of limitations. Defendant urges that a two year statute of limitations is applicable, based on the "weight of authority" from other jurisdictions.  The Court agrees, however, with Plaintiff that this Court cannot simply ignore controlling Eighth Circuit authority setting forth the statute of limitations applicable to Section 510 cases.  In *Heideman*

*v. PFL, Inc*., 904 F.2d 1262 (8th Cir. 1990), the Eighth Circuit held that the applicable statute of limitations in a Section 510 case was the limitations period for contract claims, albeit, under Tennessee law. The Court held:

> On the ERISA claim, interference with protected rights, 29 U.S.C. § 1140 (1982), the [Plaintiffs] argue that the cause of action did not arise until 1986 when they received the "smoking gun" memorandum. We disagree. The cause of action accrued when [Plaintiff] was terminated in 1979. The gist of the [Plaintiffs'] claim is that [Plaintiff] was discharged because, *inter alia,* [Defendant] did not want to pay medical benefits to the couple. By the time [Plaintiff] was fired in 1979, the [Plaintiffs] were aware of all the facts that would put reasonable persons on notice that they had an actionable claim: they knew of their health problems, they understood that [Defendant] was aware of their health problems, and they recognized that [Plaintiff] had been fired without a legitimate reason.
>
> Since ERISA does not have its own statute of limitations, the court applies the most analogous state statute when determining whether a cause of action under the act is time-barred. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), and cases cited therein. Missouri's borrowing statute, Mo.Rev.Stat. § 516.190 (1986), which prohibits the bringing of actions barred by the laws of the state in which the actions originated, requires application of the (most analogous) Tennessee statute of limitations. *The limitations period covering contracts is six years*, Tenn.Code Ann. § 28-3-109 (Repl.1980), and thus, as the District Court ruled, the ERISA claim is time-barred.

*Heideman v. PFL, Inc.* 904 F.2d 1262, 1267 (8th Cir.1990)(emphasis added).

There appears to be no other Eighth Circuit decision discussing the applicable statute of limitations for Section 510 cases. While Defendant may disagree with the

type of action articulated by the Eighth Circuit as the "most analogous," neither Defendant nor this Court is at liberty to substitute different applicable statutes of limitations. Plaintiff's Complaint was filed on January 31, 2007. His claims arose when he was advised that he would not receive severance and that he was being asked to sell his stock immediately from the termination of his employment in 2004. Because Plaintiff's Complaint was filed within the applicable Missouri statute of limitations for contract actions, *i.e.*, within 5 years from when his cause of action accrued, his action is not barred. *Heideman*, 904 F.2d at 1267; §516.110 R.S.Mo.

Failure to State a Claim

Defendant next argues that Plaintiff's Complaint fails to state a claim. According to Defendant, Plaintiff is attempting to informally amend the terms of the plan by adding as an additional term that Defendant must follow a custom and practice of paying severance equal to two weeks' salary for each year of employment. While the Court agrees that an ERISA plan my not be informally amended, see *Antolik v. Saks, Inc.*, 463 f.3d 796, 801 (8th Cir. 2006)("The reason that a "hopelessly inadequate" SPD does not trump a conflicting plan provision is rooted in the fundamental principle that 'ERISA precludes oral or informal amendments to a plan, by estoppel or otherwise.' *Jensen,* 38 F.3d at 953."), a close reading of the Complaint reveals such an informal amendment is not advanced by

Plaintiff's allegations.

The Complaint alleges that the Severance Plan provided that the *"terms of a departing employee's severance package would be negotiated between the company and the employee on a case-by-case basis."* (Emphasis added). Thus, it is clear from this allegation that Plaintiff is claiming he is entitled to a severance package and the <u>specifics</u>, *i.e.*, the terms, of the severance package are to be subsequently negotiated, not whether he is entitled to the severance package itself.[3]

With respect to the Stock Option Plan, Plaintiff alleges that the plan provided that Defendant had the option, exercisable within one hundred eighty (180) days *after the date of payment of the last installment of severance*, to purchase a plan participant's shares of QuikTrip stock for book value, which was to be determined as of the last day of the month preceding the date of payment of *the last installment of severance*. (Emphasis added.) Assuming the truth of these allegations as the Court must in this analysis, once again, Plaintiff's allegations sufficiently put Defendant on notice that he is claiming Defendant violated the Stock Option Plan by forcing Plaintiff to sell back his stock *before* he received any severance, whereas, the Plan provides that the repurchase option does not become exercisable until the

---

[3] The Court makes no finding as to the validity of this claim in terms of entitlement *vis a vis* whether Plaintiff was "terminated for cause" or "involuntarily separated," a matter of which is not yet before the Court.

last payment of the last installment of severance.  Defendant's focus on Plaintiff's allegations regarding "custom and practice" overlooks the inference that Defendant violated the Stock Plan by asking Plaintiff to sell back his stock before any payment of severance, in accordance with the terms of the Plan.

Failure to Plead Specific Intent to Deprive Plaintiff of Benefits

Defendant apparently seeks to impose on Plaintiff an additional pleading requirement wherein Plaintiff would be required to plead that Defendant had the specific intent to deprive Plaintiff of benefits to which he was entitled.  While Plaintiff may be required to *prove* such intent in later proceedings, as required under Section 510, Defendant fails to present any authority requiring more of Plaintiff than the requirements of Rule 8 of the Federal Rules of Civil Procedure. The pleading rules require only "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley,* 355 U.S. at 47.  The only permissible heightened pleading requirements in civil suits are those contained in the Federal Rules of Civil Procedure or those in federal statutes enacted by Congress.  *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002).

Rule 8(a)'s simplified pleading standard applies to all civil actions, with

limited exceptions. Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake. The Eighth Circuit, however, has declined to extend such exceptions to other contexts. In *Leatherman,* the Court stated: "'[T]he Federal Rules do address in Rule 9(b) the question of the need for greater particularity in pleading certain actions, but do not include among the enumerated action any reference to complaints alleging violations of ERISA. *Expressio unius est exclusio alterius...*' Thus, complaints in these cases, as in most others, must satisfy only the simple requirements of Rule 8(a). *Doe v. Cassel,* 403 F.3d 986, 988-989 (8th Cir. 2005).

## Conclusion

Under the current state of the Eighth Circuit law regarding the applicable statute of limitations in Section 510 cases, Plaintiff's action is not barred. Furthermore, Plaintiff has sufficiently notified Defendant of his claims against it. As such, Plaintiff's Complaint satisfies the pleading requirements of Rule and therefore, Defendant's Motion to Dismiss must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc.

No. 5], is denied.

Dated this 22nd day of February, 2007.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE